UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

In re:                                                        Chapter 13

Roseann Meyers

                                                             Case No.: **18-73808-reg**

                            Debtors.

-----------------------------------------------------------------

### OBJECTION TO CONFIRMATION AND CRAMDOWN OF THE DEBTOR'S PROPOSED CHAPTER 13 PLAN

NOW COMES NJCC-NYS CRF REO Subsidiary LLC (hereinafter "NJCC-NYS") by and through its attorneys, Knuckles, Komosinski, & Manfro, LLP, and in support of its objection to confirmation of the proposed Chapter 13 plan of debtor Roseann Meyers, (the "Debtor"), states as follows:

1.      On or about December 7, 2009, the Debtor and Co-Mortgagor, Scott J. Meyers, borrowed the sum of $325,000.00 from HSBC Mortgage Corporation. On that date, the Debtor and Co-Mortgagor executed a note evidencing indebtedness to Argent Mortgage Company, LLC (the "Note") and delivered a mortgage (the "Mortgage") securing repayment of the Note against the real property commonly known as 81 Fawn Drive, Islip, NY 11730 (the "Premises). The Mortgage was duly recorded in the Suffolk County Clerk's Office and the recording tax thereon was duly paid. The note and mortgage were ultimately assigned to NJCC-NYS by assignment of mortgage dated May 21, 2018. A copy of the Note, Mortgage and assignment are annexed hereto as **Exhibit A**.

2.      On or about June 4, 2018, the Debtor herein filed the instant petition under Chapter 13 of the Bankruptcy Code and pursuant thereto the automatic stay was imposed.

3.      As is evidenced by the Proof of Claim, NJCC-NYS is currently owed $506,788.29 of which $232,384.01 are pre-petition arrears. A copy of the Proof of Claim is attached hereto as **Exhibit B**.

4.      Debtor's plan proposes to pay to trustee $500.00 per month for 36 months. This amount is clearly insufficient to cure the arrears owed to NJCC-NYS, let alone any other creditor. A copy of Debtor's Chapter 13 plan is attached hereto as **Exhibit C**.

5.      Further, the plan lists the total amount of the claim at $318,000.00 This amount is clearly incorrect. As mentioned above and in NJCC-NYS's proof of claim, the claim amount is $506,788.29.

6.      In addition, Debtor's plan proposes for a cramdown of the Premises. The terms stated in the plan list the collateral value of the property at $200,000.00. It is unclear as to the basis for Debtor's valuation of the premises. See Ex. C.

7.      NJCC-NYS is currently in the process of obtaining a valuation and seeks to conduct an appraisal. Upon information and belief, Debtor's valuation is incorrect.

8.      Additionally, the Debtor's proposed plan suggests that estimated amount of NJCC-NYS's secured claim is $200,000.00 and the unsecured claim is $118,000.00 However, the debtor does not provide a basis for this request.

9.      Further, the debtor has listed the secured creditor incorrectly. Selene Finance LP is the servicer of the loan, and NJCC-NYS CRF REO Subsidiary LLC is the secured creditor.

10.     Consequently, NJCC-NYS is not adequately provided for in the Debtor's Chapter 13 Plan and objects to confirmation of said plan.

11.     NJCC-NYS will withdraw its objection provided the Debtor files an Amended Chapter 13 Plan sufficient to pay NJCC-NYS.

12.     NJCC-NYS respectfully requests that an additional fee of $500.00 be added to its proof of claim arrears, for the cost of preparing this objection and appearing before this Court on the date of the confirmation hearing.


        WHEREFORE, NJCC-NYS respectfully requests that confirmation and cramdown of the Debtor's plan be denied and such other and further relief as is just, proper, and equitable.


Dated:          Elmsford, New York
                August 15, 2018

                        Law Offices of Knuckles, Komosinski & Manfro, LLP
                        Attorneys for NJCC-NYS CRF REO Subsidiary LLC

                        By:  _____
                             Sara A. Coletti, Esq.
                             565 Taxter Road, Suite 590
                             Elmsford, NY 10523
                             (914) 345-3020
                             SAC@kkmllp.com

# EXHIBIT  A

# Exhibit A

*A*

# NOTE

December 07, 2009          GARDEN CITY                    NEW YORK
    [Date]                  [City]                        [State]

81 FAWN DRIVE, ISLIP, NY   11730

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received. I promise to pay U.S. $325,000.00          (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is HSBC Mortgage Corporation (USA)

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of         5.2500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st          day of each month beginning on February 01, 2010          . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on January 01, 2040          , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at 2929 WALDEN AVENUE, DEPEW, NY  14043
                                                                        or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,794.67          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE
NEW YORK FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3233 1/01
VMP®     PAGE 1 of 4
Wolters Kluwer Financial Services

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen _____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be _____ 5.00 % of any overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services

Form 3200 1/01
Page 2 of 3

10. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
SCOTT J. MEYERS By ROSEANN L. MEYERS -Borrower
as agent

_____(Seal)
ROSEANN L. MEYERS                -Borrower

_____(Seal)
                                -Borrower

_____(Seal)
                                -Borrower

Pay to the order of, without recourse

_____

_____ (UCA)

By: _____
    Robert Murray, Vice President, Post Xet Ing

*[Sign Original Only]*

NEW YORK FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services
Page 3 of 3









## SUFFOLK COUNTY CLERK
## RECORDS OFFICE
## RECORDING PAGE

Type of Instrument: MORTGAGE
Number of Pages: 19
Receipt Number : 09-0147591
MORTGAGE NUMBER: DA046226

Recorded:    12/22/2009
At:          02:37:49 PM

LIBER:    M00021898
PAGE:     746

| District: | Section: | Block: | Lot: |
|---|---|---|---|
| 0500 | 426.00 | 04.00 | 037.000 |

EXAMINED AND CHARGED AS FOLLOWS

Mortgage Amount:    $325,000.00

Received the Following Fees For Above Instrument

| | | Exempt | | | Exempt |
|---|---|---|---|---|---|
| Page/Filing | $95.00 | NO | Handling | $20.00 | NO |
| COE | $5.00 | NO | NYS SRCHG | $15.00 | NO |
| Affidavit | $0.00 | NO | Notation | $0.00 | NO |
| Cert.Copies | $0.00 | NO | RPT | $30.00 | NO |
| Mort.Basic | $1,625.00 | NO | Mort.Addl | $945.00 | NO |
| Mort.SplAddl | $0.00 | NO | Mort.SplAsst | $812.50 | NO |
| | | | Fees Paid | $3,547.50 | |

MORTGAGE NUMBER: DA046226

THIS PAGE IS A PART OF THE INSTRUMENT
THIS IS NOT A BILL

JUDITH A. PASCALE
County Clerk, Suffolk County

| 1 | 2 |

Number of pages      19

This document will be public
record. Please remove all
Social Security Numbers
prior to recording.

RECORDED
2009 Dec 22 02:37:49 PM
JUDITH A. PASCALE
CLERK OF
SUFFOLK COUNTY
L M00021898
P 746
DR046226

| 3 | Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |

**FEES**

| Page / Filing Fee | | Mortgage Amt. | 325,000 |
| Handling | 5. 00 | 1. Basic Tax | |
| TP-584 | | 2. Additional Tax | |
| Notation | | Sub Total | |
| EA-5217 (County) | Sub Total | Spec./Assit. | |
| EA-5217 (State) | | or | |
| R.P.T.S.A. | 30 00 | Spec./Add. | 3382.50 |
| Comm. of Ed. | 5. 00 | TOT. MTG. TAX | |
| Affidavit | | Dual Town ____ Dual County ____ | |
| Certified Copy | | Held for Appointment ____ | |
| NYS Surcharge | 15. 00 | Transfer Tax | |
| Other | Sub Total | Mansion Tax | |
| | Grand Total | 165 85 | The property covered by this mortgage is or will be improved by a one or two family dwelling only. |

YES ____ ✓ or NO ____

If NO, see appropriate tax clause on
page # ____ of this instrument.

| 4 | Dist. 05 | 0500 42600 0400 037000 |

P T S
R EMC A
17-DEC-09

Real Property
Tax Service
Agency
Verification

| 5 | Community Preservation Fund |

Consideration Amount $ ____

CPF Tax Due      $ ____

| 6 | Satisfactions/Discharges/Releases List Property Owners Mailing Address |

Improved ____

Vacant Land ____

RECORD & RETURN TO:

*Keith Shapiro & 2nd*
*Clete Nd Country Rd*
*Garden City, NY 11530*

TD ____
TD ____
TD ____

Mail to: Judith A. Pascale, Suffolk County Clerk
310 Center Drive, Riverhead, NY 11901
www.suffolkcountyny.gov/clerk

| 7 | Title Company Information |

Co. Name  Spano Abstract Service Corp

Title #  SP27940e-S

| 8 | **Suffolk County Recording & Endorsement Page** |

This page forms part of the attached      *Mortgage*      made
by:

*Socorro J. Meyers &*
*Roseann L. Mayers*

(SPECIFY TYPE OF INSTRUMENT)

The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

*MERS*

In the TOWN of  *Islip*

In the VILLAGE
or HAMLET of ____

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)

## IMPORTANT NOTICE

If the document you've just recorded is your SATISFACTION OF MORTGAGE, please be aware of the following:

If a portion of your monthly mortgage payment included your property taxes, you will now need to contact your local Town Tax Receiver so that you may be billed directly for all future property tax statements.

Local property taxes are payable twice a year; on or before January 10th and on or before May 31st. Failure to make payments in a timely fashion could result in a penalty.

Please contact your local Town Tax Receiver with any questions regarding property tax payment.

Babylon Town Receiver of Taxes
200 East Sunrise Highway
North Lindenhurst, N.Y. 11757
(631) 957-3004

Brookhaven Town Receiver of Taxes
One Independence Hill
Farmingville, N.Y. 11738
(631) 451-9009

East Hampton Town Receiver of Taxes
300 Pantigo Place
East Hampton, N.Y. 11937
(631) 324-2770

Huntington Town Receiver of Taxes
100 Main Street
Huntington, N.Y. 11743
(631) 351-3217

Islip Town Receiver of Taxes
40 Nassau Avenue
Islip, N.Y. 11751
(631) 224-5580

Riverhead Town Receiver of Taxes
200 Howell Avenue
Riverhead, N.Y. 11901
(631) 727-3200

Shelter Island Town Receiver of Taxes
Shelter Island Town Hall
Shelter Island, N.Y. 11964
(631) 749-3338

Smithtown Town Receiver of Taxes
99 West Main Street
Smithtown, N.Y. 11787
(631) 360-7610

Southampton Town Receiver of Taxes
116 Hampton Road
Southampton, N.Y. 11968
(631) 283-6514

Southold Town Receiver of Taxes
53095 Main Street
Southold, N.Y. 11971
(631) 765-1803

Sincerely,

Judith A. Pascale
Suffolk County Clerk

clw
2/99

Return To:

KEITH, SHAPIRO & FORD
666 OLD COUNTRY ROAD, GARDEN
CITY, NY   11530

Prepared By:
KUMAR, K, ,

SP22944e-S

_____ [Space Above This Line For Recording Data] _____

## MORGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated December 07, 2009
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." SCOTT J. MEYERS AND ROSEANN L. MEYERS

whose address is 81 FAWN DRIVE, ISLIP, NY   11730

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of 3300 S.W. 34th Avenue,
Suite 101, Ocala, FL 34474, P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **FOR
PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**
(D) "Lender." HSBC Mortgage Corporation (USA)

will be called "Lender." Lender is a corporation or association which exists under the laws of
DELAWARE                              . Lender's address is 2929 WALDEN AVENUE,
DEPEW, NY   14043-2602

| Section: | Block: 4 | Lot: 37 | Unit: |
| --- | --- | --- | --- |
| NY 3115 | | | |

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS       Form 3033 1/01

Wolters Kluwer Financial Services
VMP®-6A(NY) (0811)
Page 1 of 17                                  Initials:

**PREMISES HEREIN ARE, OR WILL BE, IMPROVED
BY A ONE OR TWO FAMILY HOUSE ONLY**

(E) "Note." The note signed by Borrower and dated **December 07, 2009**      , will be called the "Note." The Note shows that I owe Lender **THREE HUNDRED TWENTY FIVE THOUSAND and NO/100**

Dollars (U.S. $**325,000.00**                    ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by **January 01, 2040**

(F) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider ☐ Biweekly Payment Rider ☐ Other(s) [specify]

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)                    Page 2 of 17              Initials: _____              Form 3033 1/01

PREMISES HEREIN ARE, OR WILL BE, IMPROVED
BY A ONE OR TWO FAMILY HOUSE ONLY

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 81 **FAWN DRIVE**

                                                                 [Street]

**ISLIP**                     [City, Town or Village], New York 11730     [Zip Code].
This Property is in **SUFFOLK**                         County. It has the following legal description: SEE SCHEDULE A ATTACHED HERETO

THIS PROPERTY IS IMPROVED BY A ONE OR TWO FAMILY DWELLING ONLY

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

---

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

VMP®-6A(NY) (0811)          Page 4 of 17          Initials:          Form 3033 1/01

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. Monthly Payments For Taxes And Insurance.

(a) Borrower's Obligations.

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following Items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to, earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) **Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) **Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also must be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.



BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_Scott J Meyers by Roseann L Meyers atto_ (Seal)    _Roseann L Meyers_ (Seal)
SCOTT J. MEYERS By ROSEANN    -Borrower    ROSEANN L. MEYERS    -Borrower
L. MEYERS as ~~agent~~

_attorney-in-fact_
_by POA being recorded_
_Simultaneously herewith_

_____ (Seal)    _____ (Seal)
                        -Borrower                            -Borrower


_____ (Seal)    _____ (Seal)
                        -Borrower                            -Borrower


NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)                      Page 16 of 17                      Form 3033 1/01

*Fidelity National Title Insurance Company*

### SCHEDULE A
### DESCRIPTION OF PREMISES

Title No. SP22946-S

ᕍALL that certain plot piece or parcel of land, situate, lying and being at East Islip, Town of Islip, Suffolk County, State of New York, known and designated as Lot No. 70 as shown on a certain map entitled "Map of Country Village Estates, situated at East Islip, Suffolk County, New York, April 1958, Robert J. Bartley Associates Civil Engineering and Surveying, 15th Avenue, Bay Shore, New York", filed in the Office of the Clerk of Suffolk County on August 18, 1958 as File No. 2851. Said lot is bounded and described according to said map as follows.

BEGINNING at a point on the northerly end of a curve connecting the westerly side of Alexander Drive and the northerly side of Fawn Drive;

RUNNING THENCE southwesterly along said curve bearing to the right having a radius of 20.00 feet to a distance of 31.42 feet to the westerly end of said curve;

THENCE North 77 degrees 54 minutes 30 seconds West along the northerly side of Fawn Drive, a distance of 100.00 feet;

THENCE North 12 degrees 05 minutes 30 seconds East, 95.19 feet;

THENCE North 37 degrees 57 minutes 20 seconds East, 94.15 feet to the westerly side of Alexander Drive;

THENCE southerly along the westerly side of Alexander Drive along the arc of a curve bearing to the left having a radius of 140.00 feet to a distance of 156.71 feet;

THENCE South 12 degrees 05 minutes 30 seconds West still along the westerly side of Alexander Drive, 33.94 feet to the northerly end of the above mentioned curve, the point or place of BEGINNING. ᕍ

The policy to be issued under this report will insure the title to such building and improvements erected on the premises which by law constitute real property.

FOR CONVEYANCING ONLY:
TOGETHER with all right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises.

### DESCRIPTION

STATE OF NEW YORK, *NASSAU* County ss:

On the 7th day of December, 2009 before me, the undersigned, a notary public in and for said state, personally appeared

~~Scott J. Meyers and~~ Roseann L. Meyers

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

RAEANNE C. CAPONI
Notary Public, State of New York
No. 30-4929049
Qualified in Nassau County
Commission Expires April 25, 20 10

Tax Map Information:

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)                    Page 17 of 17                    Initials:                    Form 3033 1/01

| I | 2 |

Number of pages  2

This Document will be public record. Please remove all Social Security Numbers prior to recording.

RECORDED
2012 May 21 02:18:15 PM
JUDITH A. PASCALE
CLERK OF
SUFFOLK COUNTY
L M00022206
P 862

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |

3

**FEES**

Page / Filing Fee  10

Handling  20  00

TP-584

Notation  50

EA-52 17 (County) _____ Sub Total _____

EA-5217 (State)

R.P.T.S.A.  120

Comm. of Ed.  5  00

Affidavit

Certified Copy

NYS Surcharge  15  00

Other _____ Sub Total _____

GRAND TOTAL  110  50

Mortage Amt. _____

1. Basic Tax _____

2. Additional Tax _____

Sub Total _____

Spec./Assit.
Or
Spec./Add. _____

TOT. MTG. TAX _____
Dual Town _____ Dual County _____
Held for Appointment _____
Transfer Tax _____

Mansion Tax _____
The property covered by this Mortgage is or will be improved by a one or two family dwelling only.
YES _____ or NO _____
IF NO, see appropriate tax clause on page # _____ of this instrument.

| 4 | District | 0500 | 42600 | 0400 | 037000 |

Real Property Tax Service Agency Verification

R SFL A
19-APR-12

5

**Community Preservation Fund**

Consideration Amount $ _____

CPF Tax Due  $ _____

Improved _____

Vacant Land _____

TD _____

TD _____

TD _____

6  Satisfaction/Discharges/Releases List Property Owners Mailing Address
RECORD & RETURN TO:
DISCHARGE DEPT 1-800-338-4626
HSBC BANK USA NA
2929 WALDEN AVENUE
DEPEW NY 14043

Mail to: Judith A.Pascale, Suffolk County Clerk
310 · Center Drive, Riverhead, NY 11901
www.suffolkcountyny.gov/clerk

| 7 | **Title Company Information** |

Co. Name

Title #

8  **Suffolk County Recording & Endorsement Page**

This page forms of the attached    CORPORATE ASSIGNMENT OF MORTGAGE    made by:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC. AS NOMINEE FOR HSBC MORTGAGE
CORPORATION (USA), ITS SUCCESSORS AND ASSIGNS

( SPECIFY TYPE OF INSTRUMENT )

The premises herein situated in

SUFFOLK COUNTY, NEW YORK.

**TO**

HSBC BANK USA, N.A.

In the Township of  Islip

In the VILLAGE _____

or HAMLET of _____

BOXES 5 THRU 9 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

Recording Requested By:
HSBC BANK USA NA

When Recorded Return To:

DISCHARGE DEPT 1-800-338-4626
HSBC BANK USA NA
2929 WALDEN AVENUE
DEPEW, NY 14043

## CORPORATE ASSIGNMENT OF MORTGAGE

Suffolk, New York
SELLER'S SERVICING #:2565255 "MEYERS"

▬▬▬▬▬ SIS #: 1-888-679-6377

Date of Assignment: April 16th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR HSBC MORTGAGE
CORPORATION (USA), ITS SUCCESSORS AND ASSIGNS at 2929 WALDEN AVENUE, DEPEW, NY 14043
Assignee: HSBC BANK USA, N.A. at 2929 WALDEN AVENUE, DEPEW, NY 14043

Executed By: SCOTT J. MEYERS AND ROSEANN L. MEYERS  To: MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AS NOMINEE FOR HSBC MORTGAGE CORPORATION (USA), ITS SUCCESSORS AND
ASSIGNS
Date of Mortgage: 12/07/2009 Recorded: 12/22/2009  in Book/Reel/Liber: M00021898 Page/Folio: 746 as
Instrument No.: N/A  In the County of Suffolk, State of New York.

Section-Block-Lot 426.00-04.00-037.000

Property Address: 81 FAWN DRIVE, ISLIP, NY  11730

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $325,000.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the day and
year first above written:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR HSBC MORTGAGE
CORPORATION (USA), ITS SUCCESSORS AND ASSIGNS
On April 16th, 2012

By: _____
Rebecca A. Cosgrove, Assistant
Secretary

STATE OF New York
COUNTY OF Erie

On the 16th day of April in the year 2012 before me, the undersigned, personally appeared Rebecca A. Cosgrove,
Assistant Secretary, personally known to me or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
DANIEL HERINGTON
Notary Expires: 08/22/2012 #01HE6193739
Erie, New York
Qualified in Erie County

(This area for notarial seal)

*LXB*LXB/HSBC*04/16/2012 09.50:08 AM* HSBC01HSRCA000000000000000E56620* NYSUFFO* 2565255 NYSUFFO_MORT_ASSIGN_ASSH *RXRHSBC*







## SUFFOLK COUNTY CLERK
## RECORDS OFFICE
## RECORDING PAGE

Type of Instrument: ASSIGNMENT OF MORTGAGE
Number of Pages: 2
Receipt Number : 16-0000059

Recorded:     01/04/2016
At:           09:47:15 AM

LIBER:    M00022664
PAGE:     525

| District: | Section: | Block: | Lot: |
|---|---|---|---|
| 0500 | 426.00 | 04.00 | 037.000 |

**EXAMINED AND CHARGED AS FOLLOWS**

Received the Following Fees For Above Instrument

| | | Exempt | | | Exempt |
|---|---|---|---|---|---|
| Page/Filing | $10.00 | NO | Handling | $20.00 | NO |
| COE | $5.00 | NO | NYS SRCHG | $15.00 | NO |
| Notation | $1.00 | NO | Cert.Copies | $0.00 | NO |
| RPT | $60.00 | NO | | | |
| | | | Fees Paid | $111.00 | |

**THIS PAGE IS A PART OF THE INSTRUMENT**
**THIS IS NOT A BILL**

JUDITH A. PASCALE
County Clerk, Suffolk County

1  2

Number of pages _____ 2

RECORDED
2016 Jan 04 09:47:15 AM
JUDITH A. PASCALE
CLERK OF
SUFFOLK COUNTY
L M00022664
P 525

This document will be public record. Please remove all Social Security Numbers prior to recording.

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

**3** FEES

| | | **8** |
|---|---|---|
| Page / Filing Fee _____ 10.00 | | Mortgage Amt. _____ |
| Handling _____ 20.00 | | 1. Basic Tax _____ |
| TP-584 _____ | | 2. Additional Tax _____ |
| Notation _____ 2N 1.00 | | Sub Total _____ |
| EA-52 17 (County) _____ | Sub Total 31.00 | Spec./Assit. _____ |
| EA-5217 (State) _____ | | or |
| R.P.T.S.A. _____ 60 | | Spec. /Add. _____ |
| Comm. of Ed. _____ 5.00 | | TOT. MTG. TAX _____ |
| | | Dual Town _____ Dual County _____ |
| | | Held for Appointment _____ |
| Affidavit _____ | | Transfer Tax _____ |
| Certified Copy _____ | | Mansion Tax _____ |
| NYS Surcharge _____ 15.00 | Sub Total 80.00 | The property covered by this mortgage is or will be improved by a one or two family dwelling only. |
| Other _____ | | YES _____ or NO _____ |
| | Grand Total 111.00 | If NO, see appropriate tax clause on page # _____ of this instrument. |

| **4** Dist. | | **5** Community Preservation Fund |
|---|---|---|
| Real Property Tax Service Agency Verification | 3066203   0500 42600 0400 037000    P T S  R: VIT A  17-DEC-15 | Consideration Amount $ _____ |
| | | CPF Tax Due      $ _____ |
| | | Improved _____ |
| **6** Satisfactions/Discharges/Releases List Property Owners Mailing Address | | Vacant Land _____ |
| RECORD & RETURN TO:  CoreLogic  1628 Browning Road  Suite 160  Columbia, SC 29210 | | TD _____ |
| | | TD _____ |
| | | TD _____ |

| Mail to: Judith A. Pascale, Suffolk County Clerk  310 Center Drive, Riverhead, NY 11901  www.suffolkcountyny.gov/clerk | **7** Title Company Information |
|---|---|
| | Co. Name _____ |
| | Title # 34319324 |

**8** # Suffolk County Recording & Endorsement Page

This page forms part of the attached _____ Assignment of Mortgage _____ made
by: (SPECIFY TYPE OF INSTRUMENT)

HSBC Bank USA NN

The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

TO

Federal National Mortgage
Association

In the TOWN of ISLIP _____

or in the VILLAGE _____

or HAMLET of _____

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)

Recording Requested By:
**HSBC**
Prepared By: Debora Cox
**888-603-9011**
When recorded mail to:
**CoreLogic**
**1628 Browning Road**
**Suite 160**
**Columbia, SC 29210**

Case Nbr:  34319324
Ref Number:  2009794062
Property Address:
**81 FAWN DRIVE**
**ISLIP, NY 11730**
Property Location:
Township of ISLIP

SYO-AM  34319324  C  11/24/2015  AP001

This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, HSBC BANK USA, N.A. the undersigned holder of the Mortgage described below (herein "Assignor") whose address is 2929 WALDEN AVENUE, DEPEW, NY 14043 does hereby grant, sell, assign, transfer and convey unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION** whose address is **14221 DALLAS PARKWAY, SUITE 1000, DALLAS, TX 75254** all beneficial interest under that certain security instrument described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said security instrument.

| | |
|---|---|
| Beneficiary: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HSBC MORTGAGE CORPORATION (USA), ITS SUCCESSORS AND ASSIGNS** |
| Made By: | **SCOTT J. MEYERS AND ROSEANN L. MEYERS** |
| Date of Mortgage: | 12/7/2009 |
| Original Loan Amount: | $325,000.00 |
| Section: 426-00    Lot: 037-000    Block: 04-00 | |

Recorded in Suffolk County, NY on: 12/22/2009, book M00021898, page 746 and instrument number DA046226

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:
Assigned From: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HSBC MORTGAGE CORPORATION (USA), ITS SUCCESSORS AND ASSIGNS
Assigned To: HSBC BANK USA, N.A.
Date of Assignment: 4/16/2012
Recording Date: 5/21/2012 Book/Liber: M00022206 Page: 862 Instrument Number: N/A

**Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc, 14523 SW Millikan Way #200, Beaverton, OR 97005, telephone # 1-866-570-5277, which is responsible for receiving payments.**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated:
11-24-15

HSBC BANK USA, N.A.

By: _Frances Y. King_

Frances Y. King, Assistant Secretary

State of _SC_ , County of Richland

On _11-24-15_ , before me, Donna B. Shaw, a Notary Public, personally appeared Frances Y. King, Assistant Secretary of HSBC BANK USA, N.A personally known to me, or proved to me on the basis of satisfactory evidence, to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public: Donna B. Shaw
My Commission Expires: 8/31/2017

DONNA B SHAW
Notary Public, South Carolina
My Commission Expires
August 31, 2017





SUFFOLK COUNTY CLERK
RECORDS OFFICE
RECORDING PAGE

Type of Instrument: ASSIGNMENT OF MORTGAGE      Recorded: 6/1/2018
Number of Pages:    3                           At:        4:08:13 PM
Receipt Number:     18-0100787 *ELECTRONICALLY RECORDED*

                                                LIBER:   M00022931
                                                PAGE:    399

District:           Section:          Block:              Lot:
0500                426.00            04.00               037.000
                    EXAMINED AND CHARGED AS FOLLOWS

Received the Following Fees For Above Instrument
                          Exempt                              Exempt
Page/Filing     $15.00    NO      Handling      $20.00        NO
COE              $5.00    NO      NYS SRCHG      $15.00        NO
Notation         $2.00    NO      Cert.Copies     $0.00       NO
RPT            $200.00    NO
RPT-MTGFEE     $300.00    NO      Fees Paid     $557.00

THIS PAGE IS A PART OF THE INSTRUMENT
THIS IS NOT A BILL

Judith A. Pascale
County Clerk, Suffolk County

| Number of pages    3 | RECORDED<br>6/1/2018 4:08:14 PM<br>JUDITH A. PASCALE<br>CLERK OF<br>SUFFOLK COUNTY<br>L M00022931<br>P 399 |
|---|---|
| **This document will be public record. Please remove all Social Security Numbers prior to recording.** | |

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

| 3 | FEES | |

| Page / Filing Fee | 15.00 |
|---|---|
| Handling | 20. 00 |
| TP-584 | |
| Notation **4N** | 2.00 |
| EA-52 17 (County) | _____  ___ |
| EA-5217 (State) | |
| R.P.T.S.A. | 200.00 |
| Comm. of Ed. | 5. 00 |
| Affidavit | |
| Certified Copy | |
| NYS Surcharge | 15. 00 |
| Other | |
| RPT-MTGFEE | 300.00 |

Sub Total    37.00

Sub Total _____ 520.00

Grand Total _____ 557.00

| Mortgage Amt. | _____  ___ |
|---|---|
| 1. Basic Tax | _____  ___ |
| 2. Additional Tax | _____  ___ |
| Sub Total | _____  ___ |
| Spec./Assit. | |
| or | |
| Spec. /Add. | _____  ___ |
| TOT. MTG. TAX | _____  ___ |
| Dual Town _____ Dual County____ | |
| Held for Appointment _____ | |
| Transfer Tax | _____  ___ |
| Mansion Tax | _____  ___ |

The property covered by this mortgage is or will be improved by a one or two family dwelling only.

YES _____ or NO _____

If NO, see appropriate tax clause on page # _____ of this instrument.

| 4 | Dist. | Section | Block | Lot | 5 | **Community Preservation Fund** |
|---|---|---|---|---|---|---|

Real Property Tax Service Agency Verification    3645930    0500-426.00-04.00-037.000

P T S R DHO A 6/1/2018

Consideration Amount $ _____

CPF Tax Due    $ _____

| Improved | _____ |
|---|---|
| Vacant Land | _____ |
| TD | _____ |
| TD | _____ |
| TD | _____ |

| 6 | Satisfactions/Discharges/Releases List Property Owners Mailing Address |
|---|---|

**RECORD & RETURN TO:**

**Charles A Brown and Assoc DBA DocSolution**
**2316 Southmore Ave.**
**Pasadena TX 77502**

Mail to: Judith A. Pascale, Suffolk County Clerk
310 Center Drive, Riverhead, NY 11901
www.suffolkcountyny.gov/clerk

| 7 | **Title Company Information** |
|---|---|
| | Co. Name |
| | Title # |

| 8 | # Suffolk County Recording & Endorsement Page |
|---|---|

This page forms part of the attached    **ASSIGNMENT**    made by:

(SPECIFY TYPE OF INSTRUMENT)

The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

TO

In the TOWN of    **ISLIP**

In the VILLAGE

or HAMLET of _____

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

12-0104..10/08/08

(over)

If the document you've just recorded is your <u>SATISFACTION OF MORTGAGE</u>, please be aware of the following:

If a portion of your monthly mortgage payment included your property taxes, *<u>you will now need to contact your local Town Tax Receiver so that you may be billed directly for all future property tax statements.</u>

Local property taxes are payable twice a year: on or before January 10th and on or before May 31st. Failure to make payments in a timely fashion could result in a penalty.

**Please contact your local Town Tax Receiver with any questions regarding property tax payment.**

Babylon Town Receiver of Taxes
200 East Sunrise Highway
North Lindenhurst, N.Y. 11757
(631) 957-3004

Brookhaven Town Receiver of Taxes
One Independence Hill
Farmingville, N.Y. 11738
(631) 451-9009

East Hampton Town Receiver of Taxes
300 Pantigo Place
East Hampton, N.Y. 11937
(631) 324-2770

Huntington Town Receiver of Taxes
100 Main Street
Huntington, N.Y. 11743
(631) 351-3217

Islip Town Receiver of Taxes
40 Nassau Avenue
Islip, N.Y. 11751
(631) 224-5580

Riverhead Town Receiver of Taxes
200 Howell Avenue
Riverhead, N.Y. 11901
(631) 727-3200

Shelter Island Town Receiver of Taxes
Shelter Island Town Hall
Shelter Island, N.Y. 11964
(631) 749-3338

Smithtown Town Receiver of Taxes
99 West Main Street
Smithtown, N.Y. 11787
(631) 360-7610

Southampton Town Receiver of Taxes
116 Hampton Road
Southampton, N.Y. 11968
(631) 283-6514

Southold Town Receiver of Taxes
53095 Main Street
Southold, N.Y. 11971
(631) 765-1803

Sincerely,

Judith A. Pascale
Suffolk County Clerk

12-0104. 06/06/kd

Prepared by, Recording Requested By ~~and Return to~~:
SELENE FINANCE LP
9990 RICHMOND AVE., SUITE 400 SOUTH
HOUSTON, TX 77042

Return to:

Brown & Associates
2316 Southmore
Pasadena, TX 77502

# ASSIGNMENT OF MORTGAGE

6 3 3 3 4 2

## *FOR VALUE RECEIVED,*

ASSIGNOR: **COMMUNITY LOAN FUND OF NEW JERSEY, INC., ITS SUCCESSORS AND ASSIGNS**, whose address is C/O SELENE FINANCE LP, 9990 RICHMOND AVE, STE 400 S, Houston, TX 77042, does hereby assign and transfer to

ASSIGNEE: **NJCC-NYS COMMUNITY RESTORATION FUND LLC**, whose address is C/O SELENE FINANCE LP, 9990 RICHMOND AVE, STE 400 S, HOUSTON, TX 77042, all its right, title and interest in and to the described Mortgage:

BORROWER: **SCOTT J. MEYERS AND ROSEANN L. MEYERS**
BENEFICIARY: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR HSBC MORTGAGE CORPORATION (USA), ITS SUCCESSORS AND ASSIGNS**
DATED: **12/7/2009**                    AMOUNT: **$325,000.00**
RECORDED: **12/22/2009** at  Book **M00021898** Page **746**,
in the **SUFFOLK** County Clerk's Office, State of **NEW YORK**.

Property Address: 81 FAWN DRIVE, ISLIP, NEW YORK 11730

SBL: 0500-426.00-04.00-037.00
Assignment Chain: FROM MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR HSBC MORTGAGE CORPORATION (USA) TO HSBC BANK USA, N.A.  RECORDED 5/21/2012 AT M00022206, PAGE 862;
FROM HSBC BANK USA, N.A. TO FEDERAL NATIONAL MORTGAGE ASSOCIATION RECORDED 1/4/2016 AT M00022664, PAGE 525;
FROM FEDERAL NATIONAL MORTGAGE ASSOCIATION TO COMMUNITY LOAN FUND OF NEW JERSEY, INC. RECORDED 4/18/2018 AT M00022918, PAGE 348
Executed this ___05-21-2018_____.

**COMMUNITY LOAN FUND OF NEW JERSEY, INC. BY SELENE FINANCE LP, ATTORNEY IN FACT**


By: ___NATASHA GUTWILLIG___
Title: AUTHORIZED SIGNER


POA RECORDING: _____

# ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF HARRIS

This instrument was acknowledged before me on __5/21/2018__ by NATASHA GUTWILLIG the AUTHORIZED SIGNER of SELENE FINANCE LP, A DELAWARE LIMITED PARTNERSHIP, AS ATTORNEY IN FACT FOR COMMUNITY LOAN FUND OF NEW JERSEY, INC., who is personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the city of Houston, County of Harris, State of Texas.

Notary Public in and for the State of TEXAS
Notary's Printed Name:  DANIELLE R. MURPHY
My Commission Expires: 10/24/2020

DANIELLE R. MURPHY
Notary Public, State of Texas
Comm. Expires 10-24-2020
Notary ID130873214

For 325000 dated 12/7/2009

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the Secondary Mortgage Market

# EXHIBIT  B

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor 1</td><td>Roseann Meyers</td></tr>
<tr><td>Debtor 2<br>(Spouse, if filing)</td><td></td></tr>
<tr><td colspan="2">United States Bankruptcy Court for the:  Eastern District of New York</td></tr>
<tr><td>Case number</td><td>18-73808-reg</td></tr>
</table>

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

---

### Part 1:   Identify the Claim

**1. Who is the current creditor?**

NJCC-NYS CRF REO Subsidiary LLC

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Selene Finance, LP Attn: BK Dept.
Name
9990 Richmond Ave., Suite 400 S
Number      Street
Houston          TX          77042
City              State        ZIP Code

Contact phone _____

Contact email _____

Where should payments to the creditor be sent? (if different)

Selene Finance, LP Attn: BK Dept.
Name
9990 Richmond Ave., Suite 400 S
Number      Street
Houston          TX          77042
City              State        ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____     Filed on _____
                                                                                 MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

---

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |

**6. Do you have any number you use to identify the debtor?**

☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  4  5  7  9

**7. How much is the claim?**   $_____506,788.29_. **Does this amount include interest or other charges?**

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Note & Mortgage

**9. Is all or part of the claim secured?**

☐ No
☑ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe:   81 FAWN DR EAST ISLIP  New York  11730

**Basis for perfection:**   Recorded Mortgage

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                          $_____
Amount of the claim that is secured:        $____506,788.29

Amount of the claim that is unsecured:  $_____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $_____232,384.01

Annual Interest Rate (when case was filed)_ 5.25
☑ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**       $_____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  08/13/2018
                  MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | **Leslie Leanhart** |
| | First name        Middle name        Last name |
| Title | **Bankruptcy Manager** |
| Company | **Selene Finance LP** |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | **9990 Richmond Ave** |
| | **Suite 400 S** |
| | Number      Street |
| | **Houston, Texas  77042** |
| | City                State        ZIP Code |
| Contact phone | _____        Email _____ |

B 10A (Attachment A) (12/11)

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

Name of debtor: Roseann Meyers

Case number: 18-73808-reg

Name of creditor: NJCC-NYS CRF REO Subsidiary LLC

Last four digits of any number you use to identify the debtor's account: 4 5 7 9

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. Principal due (1) $ 314,758.28

2. Interest due

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 5.25 % | 03/01/2012 | 06/01/2018 | $97,744.96 |
| % | | | $ |
| % | | | + $ |

Total interest due as of the petition date $ 97,744.96  Copy total here ▶ (2) + $ 97,744.96

3. Total principal and interest due (3) $ 412,503.24

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. Late charges | 11/6/2015-7/18/2016 | (1) | $ 538.35 |
| 2. Non-sufficient funds (NSF) fees | | (2) | $ |
| 3. Attorney's fees | | (3) | $ |
| 4. Filing fees and court costs | | (4) | $ |
| 5. Advertisement costs | | (5) | $ |
| 6. Sheriff/auctioneer fees | | (6) | $ |
| 7. Title costs | | (7) | $ |
| 8. Recording fees | | (8) | $ |
| 9. Appraisal/broker's price opinion fees | | (9) | $ |
| 10. Property inspection fees | 5/23/2012-5/22/2018 | (10) | $ 541.00 |
| 11. Tax advances (non-escrow) | | (11) | $ |
| 12. Insurance advances (non-escrow) | | (12) | $ |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | $ 87,446.19 |
| 14. Property preservation expenses. Specify:_____ | | (14) | $ |
| 15. Other. Specify:_____ | | (15) | $ |
| 16. Other. Specify: FC fees | 12/31/2012-6/1/2018 | (16) | $ 6,393.35 |
| 17. Other. Specify: FC costs | 12/27/2012-6/1/2018 | (17) + | $ 2,864.87 |

18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. (18) $ 97,783.76

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☐ No

☑ Yes   Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

1. **Installment payments due**

   Date last payment received by creditor   03/01/2012
   mm/dd/yyyy

   Number of installment payments due   (1)   75

2. **Amount of installment payments due**

   75   installments @   $   1,794.67

   _____ installments @   $ _____

   _____ installments @   + $ _____

   **Total installment payments due as of the petition date**   $   134,600.25   Copy total here ▶ (2) $   134,600.25

3. **Calculation of cure amount**

   <u>Add</u> **total prepetition fees, expenses, and charges**   Copy total from Part 2 here ▶   + $   97,783.76

   <u>Subtract</u> **total of unapplied funds** (funds received but not credited to account)   - $ _____

   <u>Subtract</u> **amounts for which debtor is entitled to a refund**   - $ _____

   **Total amount necessary to cure default as of the petition date**   (3) $   232,384.01

   Copy total onto Item 4 of Proof of Claim form

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | 18-73808-reg |
| Debtor 1: | Roseann Meyers |
| Debtor 2: | |
| Last 4 digits to identify: | 4579 |
| Creditor: | NJCC-NYS CRF Reo, et al |
| Servicer: | Selene |
| Fixed accrual/daily simple interest/other: | Fixed/5.25 |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | 314,758.28 |
| Interest due: | 97,744.96 |
| Fees, costs due: | 10,337.57 |
| Escrow deficiency for funds advanced: | 83,947.48 |
| Less total funds on hand: | - 0.00 |
| Total debt: | 506,788.29 |

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | 134,600.25 |
| Prepetition fees due: | 10,337.57 |
| Escrow deficiency for funds advanced: | 83,947.48 |
| Projected escrow shortage: | 3,498.71 |
| Less funds on hand: | -0.00 |
| Total prepetition arrearage: | 232,384.01 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | 1,794.67 |
| Monthly escrow: | 1,166.23 |
| insurance: | |
| Total monthly Total payment: | 2,960.90 |

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/01/12 46 through @ 3,666.11 | | | | | | | | | | | | | | | | |
| 1/01/16 =$168,641.06 | | | 168,641.06 | Payment Due04/01/2012 | $168,641.06 | 0 | 0 | 0 | 0 | 0 | 314,758.28 | 97,744.96 | | | |
| 2/01/16 13 through @ 2,962.98 | | | | | | | | | | | | | | | | |
| 2/01/17 =$38,518.74 | | | 38,518.74 | Payment Due04/01/2012 | $207,159.80 | 0 | 0 | 0 | 0 | 0 | 314,758.28 | 97,744.96 | | | |
| 3/01/17 12 through @ 2,951.32 | | | | | | | | | | | | | | | | |
| 2/01/18 =$35,415.84 | | | 35,415.84 | Payment Due04/01/2012 | $242,575.64 | 0 | 0 | 0 | 0 | 0 | 314,758.28 | 97,744.96 | | | |
| 3/01/18 4 through @2,938.57 | | | | | | | | | | | | | | | | |
| 6/01/18 =$11,754.28 | | | 11,754.28 | Payment Due04/01/2012 | $254,329.92 | 0 | 0 | 0 | 0 | 0 | 314,758.28 | 97,744.96 | | | |

REPRESENTATION OF PRINTED DOCUMENT

# SELENE®
FINANCE

9990 Richmond, Suite 400 South
Houston, TX 77042-4546

## ANNUAL ESCROW ACCOUNT
## DISCLOSURE STATEMENT

LOAN NUMBER: ▓▓▓▓▓▓▓
DATE:   June 20, 2018

| | Previous Payment | New Payment Effective 07/01/18 |
|---|---|---|
| PRINCIPAL AND INTEREST | $1,794.67 | $1,794.67 |
| ESCROW | $1,143.90 | $1,166.23 |
| SPREAD | $.00 | $.00 |
| TOTAL PAYMENT | $2,938.57 | $2,960.90 |

SCOTT J MEYERS
ROSEANN L MEYERS
MAKELI PFEIFER
68 S SERVICE RD STOP 98
MELVILLE NY  11747-2354

CUSTOMER SERVICE  877-735-3637

## COMING YEAR ESCROW PROJECTION

The purpose of the Coming Year Escrow Projection is to determine the lowest balance "Low Point" to which your escrow account will decline over the upcoming year. The purpose of the Low Balance Summary is to compare the projected and allowable low point amounts. If the projected low point is greater than the allowable low point (*), there is a surplus. If the surplus is $50.00 or greater, it will be automatically refunded to you. If the surplus is less than $50.00, we have lowered your payment accordingly. If the projected low point is less than the allowable low point(*), there is a shortage and/or deficiency which will be recovered by an adjustment to your monthly payment over a specified number of months. The adjustment amount(s) appears in the Low Balance Summary and New Payment Information.

### ANTICIPATED ESCROW DISBURSEMENT

| | |
|---|---|
| HOMEOWNERS INS | 1,740.00 |
| CITY TAXES | 6,137.81 |
| CITY TAXES | 6,116.97 |
| TOTAL DISBURSEMENTS DIVIDED BY 12 MONTHS | 13,994.78 |
| MONTHLY ESCROW DEPOSIT | 1,166.23 |

| MONTH | PAYMENTS TO ESCROW | DESCRIPTION | PAYMENTS FROM ESCROW | CUR BAL PROJECTION | REQ BAL PROJECTION |
|---|---|---|---|---|---|
| | | BEGINNING BALANCE | | 3,498.71 | 35,782.19 |
| 07/18 | 1,166.23 | | .00 | 36,948.42 | 4,664.94 |
| 08/18 | 1,166.23 | | .00 | 38,114.65 | 5,831.17 |
| 09/18 | 1,166.23 | | .00 | 39,280.88 | 6,997.40 |
| 10/18 | 1,166.23 | | .00 | 40,447.11 | 8,163.63 |
| 11/18 | 1,166.23 | | .00 | 41,613.34 | 9,329.86 |
| 12/18 | 1,166.23 | | .00 | 42,779.57 | 10,496.09 |
| 01/19 | 1,166.23 | CITY TAXES | -6,137.81 | 37,807.99 | 5,524.51 |
| 02/19 | 1,166.23 | | .00 | 38,974.22 | 6,690.74 |
| 03/19 | 1,166.23 | HOMEOWNERS INS | -1,740.00 | 38,400.45 | 6,116.97 |
| 04/19 | 1,166.23 | | .00 | 39,566.68 | 7,283.20 |
| 05/19 | 1,166.23 | CITY TAXES | -6,116.97 | 34,615.94 | 2,332.46 * |
| 06/19 | 1,166.23 | CITY TAXES | .00 | 35,782.17 | 3,498.69 |
| TOTAL | 13,994.76 | | -13,994.78 | | |

### LOW BALANCE SUMMARY

| | |
|---|---|
| PROJECTED LOW POINT | 34,615.94 |
| ALLOWABLE LOW POINT | 2,332.46 |
| SURPLUS | 32,283.48 |
| SHORTAGE | .00 |
| ESCROW ADJUSTMENT FOR 12 MONTHS | .00 |

The cushion allowed by federal law (RESPA) is two times your monthly escrow payment (excluding MIP/PMI), unless state law specifies a lower amount.

## IMPORTANT MESSAGES

005-0814-1100F

PLEASE RETURN LOWER PORTION WITH YOUR PAYMENT AND KEEP THE TOP PORTION FOR YOUR RECORDS
INTERNET REPRINT

# SELENE®
FINANCE

SCOTT J MEYERS
ROSEANN L MEYERS

## ESCROW  SURPLUS

Your surplus will be mailed under separate cover within 30 days.



| LOAN NUMBER |
|---|
| |
| **SURPLUS AMOUNT** |
| $32,283.48 |

# ESCROW ACCOUNT HISTORY

**Date: July 1, 2018**

♦  This statement itemizes your actual escrow account transactions since your previous analysis statement or initial disclosure. The projections from your previous escrow analysis are to the left of the actual payments, disbursements and escrow balance. By comparing the actual escrow payments to the previous projections listed, you can determine where a difference may have occurred.

♦  An asterisk (*) indicates a difference from the projected activity in either the amount or date.

♦  When applicable, the letter "E" beside an amount indicates that a payment or disbursement has not yet occurred but is estimated to occur as shown.

♦  Your projected low point may or may not have been reached based on one or more of the following factors:

| PAYMENT(S) | TAXES | INSURANCE |
|---|---|---|
| · Monthly payment(s) received earlier OR later than expected | · Tax rate and/or assessed value changed | · Premium changed |
| · Monthly payment(s) received were less than OR greater than expected | · Exemption status lost or changed | · Coverage changed |
| · Previous overage was returned to escrow | · Supplemental/Delinquent tax paid | · Additional premium paid |
| · Previous shortage not paid entirely | · Tax bill paid earlier OR later than expected | · Insurance bill paid earlier OR later than expected |
| | · Tax installment not paid | · Premium was not paid |
| | · Tax refund received | · Premium refund received |
| | · New tax escrow requirement paid | · New insurance escrow requirement paid |
| | | · Lender placed insurance premium paid |

| MONTH | PAYMENTS TO ESCROW PROJECTED | ACTUAL | DISBURSEMENTS FROM ESCROW PROJECTED | ACTUAL | DESCRIPTION | ESCROW BALANCE PROJECTED | ACTUAL |
|---|---|---|---|---|---|---|---|
| | | | | | BEGINNING BALANCE | .00 | -77,830.51 |
| 07/17 | | | | | | .00< | -77,830.51 |
| 08/17 | | | | | | .00 | -77,830.51 |
| 09/17 | | | | | | .00 | -77,830.51 |
| 10/17 | | | | | | .00 | -77,830.51 |
| 11/17 | | | | | | .00 | -77,830.51 |
| 12/17 | | | | | | .00 | -77,830.51 |
| 01/18 | | | | | | .00 | -77,830.51 |
| 02/18 | | | | | | .00 | -77,830.51 |
| 03/18 | | | | | | .00 | -77,830.51 |
| 04/18 | | | | | | .00 | -77,830.51 |
| 05/18 | | | | 6,116.97 * | CITY TAXES | .00 | -83,947.48< |
| 06/18 | | | | | | .00 | -83,947.48 |
| TOTALS | 0.00 | 0.00 | 0.00 | 6,116.97 | | | |

Under Federal Law (RESPA) the lowest monthly balance in your escrow account should not exceed $0.00 or 1/6th of the total anticipated annual disbursement from your escrow account, unless your mortgage documents or state law specifies a lower amount. When your escrow balance reaches its lowest point during the account cycle, that balance is targeted to be your cushion amount. Under the Mortgage Contract or State or Federal Law, the targeted low point in your escrow account is $0.00 and the actual low point balance was -$83,947.48; the amount is indicated with an arrow (<).

Selene Finance LP is a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

Please note that if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally.

**For Servicemembers and their Dependents:** The Federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including, under most circumstances, a prohibition on foreclosure during and twelve months after the servicemember's active duty service. Selene will not foreclose on the property of a servicemember or his or her dependent during that time, except pursuant to a court order. You also may be entitled to other protections under these laws, including interest rate and fee relief. Please contact us to learn more about your rights.

# EXHIBIT  C

CLERK
UNITED STATES BANKRUPTCY COURT U.S. BANKRUPTCY
EASTERN DISTRICT OF NEW YORK    EASTERN DISTRICT OF
NEW YORK

-------------------------------------------------------X

IN RE:                              2018 JUN 18 P 2: 56
Roseann Meyers

RECEIVED

DEBTOR(S).

-------------------------------------------------------X

CHAPTER **13**
CASE NO.: **8-18-73808-reg**

# CHAPTER 13 PLAN

Revised 12/19/17

❑   Check this box if this is an amended plan.  List below the sections of the plan which have been changed:

_____

## PART 1: NOTICES

**To Debtors:** This form sets out options that may be appropriate in some cases, but the presence of an option on the form does not indicate that the option is appropriate in your circumstance or that it is permissible in your judicial district.  Plans that do not comply with the local rules for the Eastern District of New York may not be confirmable.  If you do not have an attorney, you may wish to consult one.

**To Creditors:** Your rights may be affected by this plan.  Your claim may be reduced, modified, or eliminated.  You should read this plan carefully and discuss it with your attorney.  If you do not have an attorney, you may wish to consult one. If you oppose the plan's treatment of your claim or any provision of this plan, you or your attorney must file an objection to confirmation at least 7 days before the date set for the hearing on confirmation, unless otherwise ordered by the Bankruptcy Court.  The Bankruptcy Court may confirm this plan without further notice if no objection to confirmation is filed. See  Bankruptcy Rule 3015. In addition, you may need to file a timely proof of claim in order to be paid under any plan.

**1.1:** The following matters may be of particular importance. ***Debtors must check one box on each line to state whether or not the plan includes each of the following items.  If an item is checked as "Not Included" or if both or neither boxes are checked, the provision will  be ineffective if set out later in the plan.***

| | | | |
|---|---|---|---|
| a. | A limit on the amount of a secured claim, set out in Section 3.4, which may result in a partial  payment or no payment at all to the secured creditor | ☑ Included | ❑ Not included |
| b. | Avoidance of a judicial lien or nonpossessory, non-purchase-money security interest, set out in  Section 3.6 | ❑ Included | ☑ Not included |
| c. | Nonstandard provisions, set out in Part 9 | ❑ Included | ☑ Not Included |

**1.2:** The following matters are for informational purposes.

| | | | |
|---|---|---|---|
| a. | The debtor(s) is seeking to modify a mortgage secured by the debtor(s)'s principal residence, set out in Section 3.3 | ☑ Included | ❑ Not included |
| b. | Unsecured Creditors, set out in Part 5, will receive 100% distribution of their timely filed claim | ☑ Included | ❑ Not included |

## PART 2:  PLAN PAYMENTS AND LENGTH OF PLAN

**2.1:  The post-petition earnings of the debtor(s) are submitted to the supervision and control of the Trustee and the Debtor(s) shall pay to the Trustee for a period of __36__ months as follows:**

$__500__ per month commencing __09/01/2018__ through and including __08/31/2021__ for a period of __36__ months; and

$_____ per month commencing _____ through and including _____ for a period of _____ months.

❑  Continued on attached separate page(s).

## 2.2:  Income tax refunds.

If general unsecured creditors are paid less than 100%, in addition to the regular monthly payments, during the pendency of this case, the Debtor(s) will provide the Trustee with signed copies of filed federal and state tax returns for each year commencing with the tax year __2018__, no later than April 15th of the year following the tax period.  Indicated tax refunds are to be paid to the Trustee upon receipt, however, no later than June 15th of the year in which the tax returns are filed.

## 2.3: Additional payments.

*Check one.*
   ☑  **None.**  *If "None" is checked, the rest of §2.3 need not be completed.*
   ❑  Debtor(s) will make additional payment(s) to the Trustee from other sources, as specified below.
      Describe the source, estimated amount, and date of each anticipated payment.

_____

_____

## PART 3:  TREATMENT OF SECURED CLAIMS

### 3.1:  Maintenance of payments (including the debtor(s)'s principal residence).

*Check one.*
   ❑  **None.**  *If "None" is checked, the rest of §3.1 need not be completed.*
   ❑  Debtor(s) will maintain the current contractual installment payments on the secured claims listed
      below, with any changes required by the applicable contract and noticed in conformity with any
      applicable rules.  These payments will be disbursed directly by the debtor(s).

| Name of Creditor | Last 4 Digits of Account Number | Principal Residence (check box) | Description of Collateral | Current Installment Payment (including escrow) |
|---|---|---|---|---|
|  |  | ❑ |  |  |
|  |  | ❑ |  |  |

❑  Continued on attached separate page(s).

### 3.2: Cure of default (including the debtor(s)'s principal residence).

*Check one.*

☐ **None.** *If "None" is checked, the rest of §3.2 need not be completed.*

☐ Any existing arrearage on a listed claim will be paid in full through disbursements by the trustee, with interest, if any, at the rate stated below. Unless otherwise ordered by the court, the amounts listed on a proof of claim filed before the filing deadline under Bankruptcy Rule 3002(c) control over any contrary amounts listed below. In the absence of a contrary timely filed proof of claim, the amounts listed below are controlling.

| Name of Creditor | Last 4 Digits of Acct No. | Principal Residence (check box) | Description of Collateral | Amount of Arrearage | Interest Rate (if any) |
|---|---|---|---|---|---|
|  |  | ☐ |  |  |  |
| **Selene Finance LP** | 4579 | ☑ | 1 fam house | 260,753.30 |  |

☐ Continued on attached separate page(s).

### 3.3: Modification of a mortgage secured by the debtor(s)'s principal residence.

*Check one.*

☑ The debtor(s) is not seeking to modify a mortgage secured by the debtor's principal residence.

☐ The debtor(s) is seeking to modify a mortgage secured by the debtor(s)'s principal residence.

*Complete paragraph below.*

☞ If applicable, the debtor(s) will be requesting loss mitigation pursuant to General Order #582.

The mortgage due to _____(creditor name) on the property known as _____ under account number ending _____ (last four digits of account number) is in default. All arrears, including all past due payments, late charges, escrow deficiency, legal fees and other expenses due to the mortgagee totaling $_____, may be capitalized pursuant to a loan modification. The new principal balance, including capitalized arrears will be $_____, and will be paid at ____% interest amortized over _____ years with an estimated monthly payment of $_____ including interest and escrow of $_____. The estimated monthly payment shall be paid directly to the trustee while loss mitigation is pending and until such time as the debtor(s) has commenced payment under a trial loan modification. Contemporaneous with the commencement of a trial loan modification, the debtor(s) will amend the Chapter 13 Plan and Schedule J to reflect the terms of the trial agreement, including the direct payment to the secured creditor going forward by the debtor(s).

**3.4: Request for valuation of security, payment of fully secured claims, and modification of under-secured claims.**

*Check one.*

❏ **None.** *If "None" is checked, the rest of §3.4 need not be completed.*

***The remainder of this paragraph is only effective if the applicable box in Part 1 of this plan is checked.***

☑ The debtor(s) shall file a motion to determine the value of the secured claims listed below. Such claim shall be paid pursuant to order of the court upon determination of such motion.

| Name of Creditor | Last 4 Digits of Acct No. | Description of Collateral | Value of Collateral | Total Amount of Claim | Estimated Amount of Creditor's Secured Claim | Estimated Amount of Creditor's Unsecured Claim |
|---|---|---|---|---|---|---|
| Selene Finance LP | 4579 | 81 Fawn Drive, East Islip NY | 200,000 | 318000 | 200000 | 118,000 |
|  |  |  |  |  |  |  |

❏ Continued on attached separate page(s).

**3.5: Secured claims on personal property excluded from 11 U.S.C. §506.**

*Check one.*

☑ **None.** *If "None" is checked, the rest of §3.5 need not be completed.*

❏ The claims listed below were either:
  - o  Incurred within 910 days before the petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s); or
  - o  incurred within 1 year of the petition date and secured by a purchase money security interest in any other thing of value.

These claims will be paid pursuant to §3.1 and/or §3.2. (The claims must be referenced in those sections as well.)  Unless otherwise ordered by the court, the claim amount stated on a proof of claim filed before the filing deadline under Bankruptcy Rule 3002(c) controls over any contrary amount listed below. In the absence of a contrary timely filed proof of claim, the amounts stated below are controlling.

| Name of Creditor | Last 4 Digits of Acct No. | Collateral | Amount of Claim | Interest Rate |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

❏ Continued on attached separate page(s).

### 3.6: Lien avoidance.

*Check one.*

☑ **None.** *If "None" is checked, the rest of §3.6 need not be completed.*

***The remainder of this paragraph is only effective if the applicable box in Part 1 of this plan is checked.***

❑ The debtor(s) shall file a motion to avoid the following judicial liens or nonpossessory, non-purchase money security interests as the claims listed below impair exemptions to which the debtor(s) are entitled under 11 U.S.C. §522(b) or applicable state law.  See 11 U.S.C. §522(f) and Bankruptcy Rule 4003(d).  Such claim shall be paid pursuant to order of the court upon determination of such motion.

| Name of Creditor | Attorney for Creditor | Lien Identification | Description of Collateral | Estimated Amount of Secured Claim | Interest Rate on Secured Portion, if any | Estimated Amount of Unsecured Claim |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

❑ Continued on attached separate page(s).

### 3.7: Surrender of collateral.

*Check one.*

☑ **None.** *If "None" is checked, the rest of §3.7 need not be completed.*

❑ The debtor(s) elect to surrender to each creditor listed below the collateral that secures the creditor's claim. The debtor(s) request that upon confirmation of this plan the stay under 11 U.S.C. §362(a) be terminated as to the collateral only and that the stay under 11 U.S.C. §1301 be terminated. Any timely filed allowed unsecured claim resulting from the disposition of the collateral will be treated in Part 5 below.

| Name of Creditor | Last 4 Digits of Acct No. | Description of Collateral |  |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

❑ Continued on attached separate page(s).

## PART 4:  TREATMENT OF FEES AND PRIORITY CLAIMS

### 4.1:  General.

Trustee's fees and all allowed priority claims, including domestic support obligations other than those treated in §4.5, will be paid in full without post-petition interest.

### 4.2:  Trustee's fees.

Trustee's fees are governed by statute and may change during the course of the case.

### 4.3: Attorney's fees.

The balance of the fees owed to the attorney for the debtor(s) is $_____.

### 4.4:  Priority claims other than attorney's fees and those treated in §4.5.

*Check One.*

☑ **None.** *If "None" is checked, the rest of §4.4 need not be completed.*

□ The debtor(s) intend to pay the following priority claims through the plan:

| Name of Creditor | Estimated Claim Amount |
|---|---|
|  |  |
|  |  |

□ Continued on attached separate page(s).

### 4.5:  Domestic support obligations.

*Check One.*

☑ **None.** *If "None" is checked, the rest of §4.5 need not be completed.*

□ The debtor(s) has a domestic support obligation and is current with this obligation. *Complete table below; do not fill in arrears amount.*

□ The debtor(s) has a domestic support obligation that is not current and will be paying arrears through the Plan. *Complete table below.*

| Name of Recipient | Date of Order | Name of Court | Monthly DSO Payment | Amount of Arrears to be Paid through Plan, If Any |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

## PART 5:  TREATMENT OF NONPRIORITY UNSECURED CLAIMS

Allowed nonpriority unsecured claims will be paid pro rata:

- ☑ Not less than the sum of $_____3500_____ .
- ☐ Not less than _____% of the total amount of these claims.
- ☐ From the funds remaining after disbursement have been made to all other creditors provided for in this plan.

If more than one option is checked, the option providing the largest payment will be effective.

## PART 6:  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1:  The executory contracts and unexpired leases listed below are assumed and will be treated as specified.  All other executory contracts and unexpired leases are rejected.**

*Check one.*
- ☑ **None.** *If "None" is checked, the rest of §6.1 need not be completed.*
- ☐ **Assumed items.**  Current installment payments will be paid directly by the debtor(s) as specified below, subject to any contrary court order or rule.  Arrearage payments will be disbursed by the trustee.

| Name of Creditor | Description of Leased Property or Executory Contract | Current Installment Payment by Debtor | Amount of Arrearage to be Paid by Trustee |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

## PART 7:  VESTING OF PROPERTY OF THE ESTATE

Unless otherwise provided in the Order of Confirmation, property of the estate will vest in the debtor(s) upon completion of the plan.

## PART 8:  POST-PETITION OBLIGATIONS

**8.1:**  Post-petition mortgage payments, vehicle payments, real estate taxes, and domestic support obligations are to be made directly by the debtor(s) unless otherwise provided for in the plan.

**8.2:**  Throughout the term of this Plan, the debtor(s) will not incur post-petition debt over $2,500.00 without written consent of the Trustee or by order of the Court.

## PART 9:  NONSTANDARD PLAN PROVISIONS

**9.1: Check "None" or list nonstandard plan provisions.**

    ☑  **None.** *If "None" is checked, the rest of §9.1 need not be completed.*

*Under Bankruptcy Rule 3015(c), nonstandard provisions must be set forth below.  A nonstandard provision is a provision not otherwise included in the form plan or deviating from it.  Nonstandard provisions set out elsewhere in this plan are ineffective.*

**The following plan provisions will be effective only if there is a check in the box "included" in §1.1(c).**

_____

_____

_____

_____


## PART 10:  CERTIFICATION AND SIGNATURE(S):

**10.1:** I/we do hereby certify that this plan does not contain any nonstandard provisions other than those set out in the final paragraph.

_____          _____
Signature of Debtor 1                      Signature of Debtor 2

Dated: _06-18-2018_                        Dated: _____


_____
Signature of Attorney for Debtor(s)

Dated: _____